UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-CV-24670-UNGARO/MCALILEY

GENTI JANKULA,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**SEALED[1] REPORT AND RECOMMENDATION ON
PLAINTIFF'S PETITION TO CONFIRM ARBITRAL AWARD AND
DEFENDANT'S CROSS-PETITION TO VACATE ARBITRAL AWARD**

Before this Court for disposition is Plaintiff's Petition to Confirm Arbitral Award, and Defendant's Cross-Petition to Vacate Arbitral Award. DE 1 and 14. The Honorable Ursula Ungaro referred both petitions to me on February 12, 2019. DE 29. I have reviewed the petitions, responses, replies and governing law, and the petitions are ripe for decision. For the reasons stated below, I **RECOMMEND** that the Court grant Plaintiff's Petition to Confirm, and deny Defendant's Petition to Vacate.

**I.    FACTS**

Plaintiff is a former seaman for Defendant. DE 1-2 at 2.[2] In December of 2014,

---

[1] Given the Court's prior Orders sealing the key pleadings in this matter at the parties' request, DE 6 and 21, this Report and Recommendation, which references and quotes from documents that are presently sealed, has been filed under seal.

[2] The Court's citations are to the facts set forth in the final arbitration award.

Plaintiff suffered an injury to his back while trying to get out of his assigned bed on Defendant's vessel. *Id.* Plaintiff attributed his injury to a broken handrail attached to the bed which, according to Plaintiff, broke away from the attached wood. *Id.* Over the course of a month, Plaintiff repeatedly sought medical treatment from Defendant for pain in his back. *Id.* at 3. Although Defendant provided pain relief medication and arranged for on-shore medical evaluations, Plaintiff continued to complain of significant pain in his back. *Id.* At some point in January of 2015, Defendant sent Plaintiff to his home country of Albania for medical treatment. *Id*. Doctors subsequently diagnosed Plaintiff as having multiple compression fractures in his spine. *Id* at 4. Plaintiff, through his attorney, demanded maintenance and cure from Defendant. *Id* at 3-4. Although Defendant provided Plaintiff with some amount of money for treatment, the amount of money was woefully inadequate, according to Plaintiff. *Id* at 4. Plaintiff demanded more money from Defendant, and Defendant refused. *Id.* at 4-5. Plaintiff soon thereafter instituted arbitration proceedings against Defendant. *Id*. at 6. After twenty-five (25) months of arbitration, the arbitrator entered an award in favor of Plaintiff. DE 1-3 at 2, 11. Plaintiff initiated this proceeding to confirm the arbitration award, and Defendant opposes confirmation.

## II.     STANDARD OF REVIEW

"A federal court's review of an arbitration award is highly deferential and extremely limited." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1271

(11th Cir. 2015); *see also Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 613 F. Supp. 2d 1362, 1366-67 (S.D. Fla. 2009) (district court's review of a foreign arbitration award is "quite circumscribed" and "there is a general pro-enforcement bias manifested in the Convention"). Arbitration awards are "presumptively entitled to deference and enforcement." *Int'l Bhd. of Teamsters v. Amerijet Int'l, Inc.*, No. 12-60654-CIV, 2013 WL 6388562, at *2 (S.D. Fla. Dec. 5, 2013); *see also Gianelli Money Purchase Plan & Tr. v. ADM Inv'r Servs., Inc.*, 146 F.3d 1309, 1312 (11th Cir. 1998) (the FAA "presumes that arbitration awards will be confirmed").

"District courts hearing [a]rbitration appeals will not re-examine the merits or factual determinations of the underlying arbitration award." *Amerijet Int'l*, 2013 WL 6388562, at *2 (quoting *Great Am. Ins. Co. v. Moye*, 733 F. Supp. 2d 1298, 1301 (M.D. Fla. 2010)). "[A] panel's incorrect legal conclusion is not grounds for vacating or modifying the award." *White Springs Agric. Chems., Inc. v. Glawson Invs. Corp.*, 660 F.3d 1277, 1280 (11th Cir. 2011). The Court's limited review is critical to "maintain arbitration's essential virtue of resolving disputes straightaway." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008). "If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568-69 (2013) (quoting *Hall Street*, 552 U.S. at 588).

### III.  DISCUSSION

In his motion to confirm the arbitration award, Plaintiff argues that the

arbitrator's award falls under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").[3] The United States acceded to the Convention in 1970. *Risk Insurers*, 141 F.3d at 1440. The statutory vehicle for enforcement of the Convention is Chapter 2 of the Federal Arbitration Act (the "FAA"). *Id.* An award falls under Chapter 2 of the FAA if: (i) the award arises from a "commercial" relationship; (ii) the award concerns a defined legal relationship, whether contractual or not; and (iii) the award arises out of the relationship, which is not entirely between the citizens of the United States. 9 U.S.C. § 202.

Section 207 of the FAA provides for confirmation of awards under the Convention, subject only to the limited grounds for refusal specified in the Convention. 9 U.S.C. § 207. There are only seven grounds upon which an arbitration award may be challenged. *Risk Insurers*, 141 F.3d at 1441. Plaintiff argues that no such ground applies here. Defendant argues that two grounds apply:

> (1) Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> . . .
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

---

[3] The Convention, although drafted under the auspices of the United Nations, is commonly referred to as the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998).

4

. . .

> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place.

*Id.* at 1442 n.8 (emphasis added). The Court addresses the Section 1(b) and 1(d) exceptions in turn.

The Section 1(b) Exception. This is commonly referred to as the "unable to present case" exception. The Second Circuit has noted that this defense corresponds to the due process defense that a party was not given "the opportunity to be heard 'at a meaningful time and in a meaningful manner'" as defined by the Supreme Court. *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 146 (2d Cir. 1992) (holding that enforcement of an arbitral award should be refused if a party was denied due process). Under this exception, an arbitral award should be denied or vacated if the party challenging the award proves that it was not given a meaningful opportunity to be heard as federal due process jurisprudence defines it. *Id.* at 145-6.

An arbitrator must provide a fundamentally fair proceeding. *See Iran Aircraft*, 980 F.2d at 146; *Hoteles Condado Beach v. Union DeTronquistas*, 763 F.2d 34, 40 (1st Cir. 1985); *Hall v. E. Air Lines, Inc.*, 511 F.2d 663, 663-64 (5th Cir. 1975). A fundamentally fair proceeding is one that "meets 'the minimal requirements of fairness'—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Sunshine Mining Co. v. United Steelworkers*, 823 F.2d 1289, 1295 (9th Cir.

1987).  A court should not confirm an award when "there was a procedural infirmity that rendered the proceedings fundamentally unfair."  *Karaha Bodas Co., L.L.C. v. Perushaan Pertambangan Minyak Dan Gas Bumi Negara*, 190 F. Supp. 2d 936, 949 (S.D. Tex. 2001); *see also Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123 (7th Cir. 1997) (collecting cases).

Importantly, parties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena.  *See Dean v. Sullivan*, 118 F.3d 1170, 1173 (7th Cir. 1997).  As the First Circuit has explained:

> An arbitrator enjoys wide latitude in conducting an arbitration hearing. Arbitration proceedings are not constrained by formal rules or procedure or evidence; the arbitrator's role is to resolve disputes, based on his consideration of all relevant evidence, once the parties to the dispute have had a full opportunity to present their cases.

*Hoteles Condado Beach*, 763 F.2d at 38.  "Arbitrators are not bound by the rules of evidence." *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203 n.4 (1956).  Moreover, an "arbitrator is not bound to hear all of the evidence tendered by the parties. . . . [H]e must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments."  *Hoteles Condado Beach*, 763 F.2d at 39.

<u>The Section 1(d) Exception</u>.  Commonly referred to as the "procedural violation" exception, Section 1(d) does not mean that *any* procedural violation invalidates an arbitration award.  A District Court, in *Hammermills,* explained the scope of Section 1(d) in this way:

6

> The Court does not believe that section 1(d) of Article V was intended, as CBG argues, to permit reviewing courts to police every procedural ruling made by the Arbitrator and to set aside the award if *any* violation of ICC procedures is found. Such an interpretation would directly conflict with the "pro-enforcement" bias of the Convention and its intention to remove obstacles to confirmation of arbitral awards. *See Carte Blanche (Signapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.,* 683 F.Supp. 945, 956 (S.D.N.Y.1988) ("A major purpose of the Federal Arbitration Act is to avoid delay and unnecessary expense to the parties ..., and the delay that would result from reviewing procedural rulings of the arbitrators would be substantial."); *cf. Parsons & Whittemore Overseas Co.,* 508 F.2d at 973 ("An expansive construction of this defense [section 2(b) of Article V] would vitiate the Convention's basic effort to remove pre-existing obstacles to enforcement."). Rather, the Court believes that ***a more appropriate standard of review would be to set aside an award based on a procedural violation only if such violation worked substantial prejudice to the complaining party***.

*Compagnie des Bauxites de Guinee v. Hammermills, Inc.*, No. 90-0169, 1992 WL 122712, at *5 (D.D.C. May 29, 1992) (emphasis added). Courts around the country have adopted the "well-reasoned" substantial prejudice analysis in *Hammermills*[4] and both parties in this case cite the *Hammermills* standard to this Court. DE 14 at 10; DE 22 at 16. Thus, the Court applies the substantial prejudice standard set forth in *Hammermills*.

Defendant raises Section 1(b) and 1(d) exception challenges to the arbitration award, arguing that the arbitrator erred by: (1) permitting Plaintiff a reply; (2) denying

---

[4] *Karaha*, 190 F. Supp. 2d at 945; *see also Purus Plastics GmbH v. Eco-Terr Distrib., Inc.* No. C18-0277, 2018 WL 3064817, at *7 (W.D. Wash. June 21, 2018); *Calbex Mineral Ltd. v. ACC Resources Co.*, 90 F. Supp. 3d 442, 463 (W.D. Pa. 2015).

7

Defendant a deposition and a medical examination; and (3) ruling on the papers without a hearing. I consider each challenge in turn.

### A.     Plaintiff's Reply

Defendant challenges the arbitrator's decision to permit Plaintiff to file a reply and, once the reply was filed, the arbitrator's decision not to strike the reply.

By way of background, Plaintiff filed his operative statement of claim on February 8, 2017. Plaintiff brought claims for negligence, unseaworthiness, failure to provide maintenance and cure, and failure to treat. DE 25-4. Plaintiff alleged that, because of Defendant's negligence, he suffered substantial damages. *Id.* Although Plaintiff did not calculate his damages, Plaintiff alleged the following:

> Claimant was injured about Claimant's body and extremities, suffered physical pain and suffering, psychological pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, incurred medical expenses in the care and treatment of Claimant's injuries, suffered physical handicap, lost wages/benefits, income lost in the past, and his working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature and Claimant will suffer the losses and impairments in the future. In addition, Claimant in the past and in the future has lost the fringe benefits that come with Claimant's job, including but not limited to found, free food, free shelter, free medical care, free uniforms, vacation, and free airline ticket home and back.

*Id.* at 16. Defendant filed its response on April 4, 2017. DE 25-5. It included two reports from defense experts, both of whom opined that Plaintiff's injuries were not

8

caused by Defendant and were instead traceable to Plaintiff's smoking habit or some other, unknown cause. *Id.* at 8-11.

The arbitrator then offered Plaintiff the opportunity to reply, which Plaintiff accepted, together with an extension of time for Plaintiff to do so. DE 22, Exhibit I. After Defendant field its response, Plaintiff saw a new medical doctor, who authored an expert report to refute Defendant's position. *Id.*, Exhibit J at 3-6. In his reply, Plaintiff relied upon that expert report as evidence that Plaintiff's injuries were caused by his fall from his bed. *Id.* Plaintiff also quantified his damages, seeking over three million dollars. *Id* at 16.

Defendant moved to strike Plaintiff's reply, arguing that it raised completely new claims and violated proper procedure. *Id.*, Exhibit K. The essence of Defendant's position is that prior to the reply, Defendant viewed this case as a minimal-injury or minimal dollar amount case but, after the reply, Defendant realized that Plaintiff was seeking, and had evidence to support, a large damages award. The arbitrator denied Defendant's motion to strike, finding that Plaintiff did not raise any new claims in his reply—he simply quantified his damages, together with supporting evidence. *Id.*, Exhibit L.

Upon review of Plaintiff's statement of claim and reply, the Court agrees with the arbitrator; Plaintiff's reply did not add or alter any claim and, as a result, the

9

arbitrator's decision to permit the reply did not violate a rule of procedure.[5]  Nor did the reply disregard the minimal requirements of fairness, by depriving Defendant of the meaningful opportunity to be heard[6] because the arbitrator required Plaintiff to disclose additional medical information after his reply and permitted Defendant to file two sur-replies with additional medical expert evidence based upon that information.

> B. Defendant's Request for a Deposition and Medical Examination of Plaintiff

Defendant also challenges the arbitrator's refusal to permit Defendant to perform a medical examination of Plaintiff or depose Plaintiff *after* Plaintiff's reply.  Both Plaintiff and the arbitrator acknowledged that, as a general matter, Defendant had the right to a medical examination.  DE 22 at 17.  The arbitrator based his decision to deny Defendant's request on Rule 1 of the rules of arbitration, which reads: "These rules are designed to secure the most expeditious, private and inexpensive resolution and determination of every case, where in law or equity."  DE 14-1 at 2.  The arbitrator therefore weighed one rule, the rule requiring a rapid and inexpensive determination, with another rule, the right to medically examine a Plaintiff, and did so in the context of the case.  Defendant's request for a medical examination was for Plaintiff to fly from

---

[5] Rule 10 of the parties' arbitration agreement restricts the addition of new claims. DE 14-1 at 7. Even if, arguendo, the arbitrator violated Rule 10 by permitting Plaintiff's reply, that did not cause Defendant "substantial prejudice", given Defendant's opportunities to file sur-replies and engage in additional discovery.  *See Hammermills*, 1992 WL 122712, at *5.

[6] *See Iran Aircraft*, 980 F.2d at 146.

Albania to Miami—at Plaintiff's expense—fifteen months into the arbitration proceedings.  DE 22, Exhibit L.  Defendant's request to depose Plaintiff came even later—nineteen months into the proceedings.  DE 22, Exhibit M.  Defendant had many opportunities to examine Plaintiff and, indeed, Defendant examined Plaintiff via medical staff onboard Defendant's ship and specialists on the island of St. Thomas, while Plaintiff was still a crew member and complaining of his injuries.[7]

With respect to a deposition of Plaintiff, the arbitrator noted that the Defendant waited nineteen months before it requested a deposition.  DE 22, Exhibit O.  Additionally, the arbitrator considered the large amount of medical and expert evidence that both parties had assembled.  *Id.*  In light of the volume of that evidence, the arbitrator concluded that Plaintiff's testimony would not add anything to the arbitrator's final decision.  *Id.*  Finally, the arbitrator recognized his broad discretion under Rule 16 of the parties' rules of arbitration which reads: "The Arbitrator(s) shall have the discretion to allow the further exchange of information between the parties for good cause."  DE 25-1.  The arbitrator exercised that discretion in favor of refusing to permit the deposition of the Plaintiff.

The Court concludes that the arbitrator did not violate a rule or procedure of arbitration by denying Defendant's request for a medical evaluation and request for a

---

[7] Arguably Defendant also effectively examined Plaintiff through an unspecified number of doctors in Europe while Defendant was still paying Plaintiff for his maintenance and cure.  DE 22, Exhibit A.

11

deposition. By way of analogy, under the Federal Rules of Civil Procedure, a party is entitled to take depositions and related medical discovery. Fed. R. Civ. P. 30. Even so, a party may lose the right to take a deposition in federal court if the party delays and, for example, the deadline for discovery expires. And while a federal court may have viewed Defendant's request for discovery (fifteen months into the proceedings) through a different lens than did the arbitrator, parties who chose to remedy their disputes in arbitration rather than litigation cannot expect the same procedures they would find in the judicial arena. *See Dean*, 118 F.3d at 1173. "An arbitrator enjoys wide latitude. . . . Arbitration proceedings are not constrained by formal rules or procedure or evidence; the arbitrator's rule is to resolve disputes, based upon his consideration of all relevant evidence, once the parties to the dispute have had a full opportunity to present their cases." *Hoteles Condado*, 763 F.2d at 38. Similarly, an arbitrator is not "bound to hear all of the evidence," and, instead, "must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Id* at 39.

Given Defendant's delay in seeking additional discovery from Plaintiff, the Court concludes that the arbitrator did not violate procedure in its reliance on Rule 1's emphasis on expeditious resolution. And even if the arbitrator did err, this did not cause Defendant substantial prejudice, given the additional discovery and sur-replies that the arbitrator permitted Defendant.[8] Finally, the arbitrator's decision to limit discovery does

---

[8] The arbitrator also ameliorated any prejudice to Defendant by not considering any of Plaintiff's unsworn statements in his final decision. DE 1-3 at 10.

not render the proceedings fundamentally unfair for the reasons set forth in the following section.

### C. The Arbitrator's Decision to Rule on the Papers

Pursuant to Rule 26 of the parties' agreed-to arbitration rules:

> Unless otherwise specified . . . or otherwise agreed upon in writing by the parties, the Arbitrator(s) shall decide the dispute at an In-Person/Oral Arbitration Hearing.

DE 14-1 at 14. Defendant contends that because the arbitrator ruled without holding a hearing and because Defendant never consented to this in writing, Defendant was denied due process and the arbitration proceeding was fundamentally unfair. Upon review of the record, it does appear that Defendant never formally consented to the arbitrator ruling on the papers alone and, as a result, Defendant's position that the arbitrator committed a procedural error is not without merit. Nonetheless, the appropriate question is whether the procedural violation, if it existed, resulted in substantial prejudice to Defendant. *Hammermills*, 1992 WL 122712, at *5. This must be answered in the context of the record as a whole.

Early in the arbitration proceedings, on December 12, 2016, the arbitrator advised the parties that he "intend[ed] to rule on the pleadings and does not require the parties to come to Monaco, so [Plaintiff] should not incur any travel and accommodation costs." DE 22-6 at 18. In response to this statement, Defendant was silent; it did not object. A few months later, on April 10, 2017, the arbitrator again advised the parties of his intent to rule on the papers, but this time the arbitrator expressly invited the parties to inform

13

him if they desired otherwise.  DE 22-9.  Again, Defendant was silent; Defendant did not object or voice a concern.[9]  Approximately one year later, on March 30, 2018, as the arbitrator was nearing rendering a final decision, the arbitrator informed the parties of his intent to rule and issue a final award as soon as possible.  *Id.*, DE 22-15.  Taken in context, the arbitrator's statement was a third indication of his intent to rule solely on the papers.  Again, Defendant was silent and did not object.

The arbitrator's final award demonstrates the reasonable measures the arbitrator took to avoid prejudice to Defendant.  DE 1-3 at 5-10.  The arbitrator explained that he had erred on the side of allowing Defendant extra due process—he permitted two rounds of sur-replies and a substantial amount of rebuttal expert testimony from Defendant.  *Id.*  The arbitrator ruled in Defendant's favor on many matters, including choice of law and the production of MRI scans, and the arbitrator also credited many of Defendant's arguments on damages and greatly discounted Plaintiff's damages demand.  *Id.*

This record simply does not support that Defendant was denied the opportunity to be heard, or that the arbitrator ruled on an inadequate record.  The evidence in this case, on both sides, was substantial.  DE 1-3.  The arbitrator's decision was thoroughly reasoned.  *Id.*  He ruled in Defendant's favor in many respects.  *Id.*  Defendant was

---

[9] Arguably, Defendant consented in writing.  After the arbitrator transmitted his order (wherein he invited the parties' responses), Plaintiff's response was to seek a modification of certain deadlines.  DE 22-9.  Defendant's position on Plaintiff's request was that it was not opposed.  *Id.*  Thus, the only response the arbitrator ever received from his inquiry of the parties was that Defendant had no objection.

14

permitted many opportunities—which it took—to have its defenses fully heard and considered by the arbitrator. *Id.* The arbitrator expressly acted to limit any prejudice to the Defendant that arose because of the arbitrator's rulings. *Id.*

The Court reviews this record knowing that Plaintiff's award is "subject only to minimal standards of domestic judicial review,"[10] and that this review is "among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007). The Court concludes that Defendant has not met its heavy burden to justify vacating the arbitration award. Defendant has not shown that it was denied a fundamentally fair proceeding, nor has Defendant shown that a rules violation by the arbitrator caused substantial prejudice to Defendant.[11] The record supports the confirmation of Plaintiff's arbitration award.

## IV.   RECOMMENDATION

Accordingly, I respectfully **RECOMMEND** that the Court **GRANT** Plaintiff's Petition to Confirm Arbitral Award [DE 1], and **DENY** Defendant's Cross-Petition to Vacate Arbitral Award [DE 14].

## V.   NOTICE OF RIGHT TO OBJECT

**No later than fourteen days from the date of this Report and Recommendation** the parties may file any written objections to this Report and

---

[10] *Risk Insurers*, 141 F.3d at 1440.

[11] The Court has reviewed Defendant's Notice of Supplemental Authority and finds that no case in the Notice necessitates discussion.

Recommendation with the Honorable Ursula Ungaro, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v.* Johnson, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in chambers at Miami, Florida, this 8th day of July, 2019.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

Cc:   The Honorable Ursula Ungaro
      Counsel of Record