UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-cv-24670-UU

GENTI JANKULA,

    Plaintiff,

vs.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S REPORT & RECOMMENDATION (D.E. 40)**

Plaintiff, Genti Jankula, hereby files this Response to Defendant Carnival Corporation's Objection to the Magistrate's Report and Recommendation (the "R&R"), and states as follows.

    **I.    This Court should review the R&R for clear error only, based on Carnival's failure to lodge specific objections to the R&R**

Carnival's Objection is so deficient that this Court need not conduct a full *de novo* review of the R&R and should review it only for clear error. Typically, a District Court reviews *de novo* a Magistrate Judge's R&R pertaining to a dispositive motion to which the losing party has "properly objected." Fed. R. Civ. P. 72(b)(3). However, the Eleventh Circuit has held: "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)).

When a party's objection fails to identify specific portions of an R&R that are purportedly objectionable, and merely re-asserts the same arguments previously raised and rejected by the

magistrate judge, a District Court reviews the R&R for clear error only. As another court in this Circuit observed:

> Many of Defendant's objections to the R&R consist of nothing more than a restatement of their original arguments put forth in the motion to dismiss and in their response to Plaintiff's motion to amend. In such a scenario as this, some courts have held that it is more appropriate to disregard Defendants' objections and review the R&R for clear legal error, rather than conducting a de novo review of the Magistrate's findings.

*Akins v. Atlanta Indep. School System*, 2015 WL 13694594, *3 (N.D. Ga. Sept. 29, 2015). Courts around the country apply this principle. *See, e.g.*, *Pall Corp. v. Entegris Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008) ("However, when a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."); *Betancourt v. Ace Ins. Co. of Puerto Rico*, 313 F. Supp. 2d 32, 34-35 (D.P.R. 2004) (reviewing for clear error where the plaintiff raised "the same arguments that were considered by the Magistrate Judge in reaching her opinion" and stating "a plaintiff may not simply restate the arguments that the Magistrate Judge considered and expect the Court to treat the filing seriously").

Because Carnival merely repeats its original arguments already considered and rejected by Magistrate Judge McAliley, this Court should review the R&R for clear error and adopt the R&R in its entirety.[1]

## II. Even under a *de novo* standard of review, Carnival's Objection is without merit

To the extent that Carnival's Objection covers any new ground and specifically takes issue with any portion of the R&R, this Court should reject those arguments. The primary, overarching

---

[1] The overwhelming majority of Carnival's 19-page Objection is a verbatim repetition of Carnival's Cross-Petition to Vacate. (*Compare* D.E. 40 (Objection to R&R) *with* D.E. 14 (Cross-Petition to Vacate)). To illustrate that point, Plaintiff attaches to this filing a copy of Carnival's Objection, with yellow highlighting to reflect the vast swaths of text that are a word-for-word repetition of the Cross-Petition. (*See* **Exhibit A**).

defect with Carnival's Objection is that — just like the Cross-Petition — it ignores the exceptionally narrow scope of review that federal courts apply when reviewing petitions to confirm or vacate foreign arbitral awards. The R&R appropriately cited that rigorous standard and observed it carefully, noting: "[a] federal court's review of an arbitration award is highly deferential and extremely limited"; district courts "will not re-examine the merits or factual determinations of the underlying arbitration award"; and "[a] panel's incorrect legal conclusion is not grounds for vacating or modifying the award." (D.E. 35, at 2-3 (citations omitted)). *See also id.* at 15 ("The Court reviews this record knowing that Plaintiff's award is 'subject only to minimal standards of domestic judicial review,' and that this review is 'among the narrowest know to the law.'") (citations omitted).

As discussed below, Carnival's Objection merely re-asserts its original arguments that the Magistrate Judge already properly rejected, based largely on this highly deferential standard of review, a standard the Supreme Court has observed is necessarily narrow to "maintain arbitration's essential virtue of resolving disputes straightaway." *Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008). Keeping that standard in mind, Plaintiff addresses Carnival's various arguments below.

To the extent this Court undertakes a full *de novo* review of this matter — including revisiting Carnival's recycled arguments — Plaintiff respectfully refers the Court to the arguments asserted in his Combined Reply in Further Support of Petition to Confirm / Response to Defendant's Petition to Vacate the Foreign Arbitral Award. (D.E. 22).

### A. Timeline of relevant events in arbitration

To provide context, Plaintiff re-prints below a timeline of events helpful to understanding the Arbitrator's rulings. Plaintiff previously provided this same timeline with his Combined Reply

in Further Support of Petition to Confirm / Response to Defendant's Petition to Vacate the Foreign Arbitral Award. (*See* D.E. 22, at 4-12). Plaintiff has updated the citations within the timeline to reflect the docket entries where those original source documents can be found.

The timeline is particularly helpful to illustrate one of the bases for the Magistrate's R&R — namely, that any procedural error which may have occurred is not grounds for vacatur based on Carnival's inability to show that any such error caused "substantial prejudice" or resulted in a "fundamentally unfair" proceeding. The R&R repeatedly noted (and the timeline confirms) that the Arbitrator took extensive affirmative steps to limit the effect of his procedural rulings by affording additional process to Carnival, such as disregarding Plaintiff's unsworn statement, requiring Plaintiff to produce additional MRI films to Carnival, and allowing Carnival to file two sur-replies and several rebuttal expert reports. (*See* D.E. 35, at 10, 10 n.5, 12, 12 n.8, and 14).

| Date | Filing or Event | Comments |
|---|---|---|
| July 6, 2016 | Claimant's Statement of Claim (**D.E. 22-4**) | • Asserts claims for: (1) Jones Act negligence; (2) Unseaworthiness; (3) failure to provide maintenance and cure; (4) failure to treat; and (5) declaratory judgment invalidating arbitration clause. |
| Aug. 12, 2016 | ***Respondent's*** Reply to Statement of Claim (**D.E. 22-5**) | • Carnival denies all liability and asserts 22 affirmative defenses. |
| Dec. 12, 2016 | Order on Various Preliminary Issues (**D.E. 22-6**) | • Arbitrator rules in Carnival's favor on: (1) validity of Seafarer Agreement; (2) applicability of Panamanian law; and (3) enforceability of forum selection clause specifying Monaco as the place of the arbitration. (Order at 19).<br>• Arbitrator advises that he "***intends to rule on the pleadings*** and does not require the parties to come to Monaco, so Claimant should not incur any travel and accommodation costs." (Order at 18). |

| Date | Filing or Event | Comments |
|---|---|---|
| Feb. 8, 2017 | Claimant's Revised Statement of Claim **(D.E. 22-7)** | <ul><li>Asserts claims for: (1) Jones Act negligence; (2) Unseaworthiness; (3) failure to provide maintenance and cure; (4) failure to treat; (5) declaratory judgment invalidating arbitration clause; and (6) Panamanian law claims.</li><li>Attaches extensive supporting exhibits, including medical records, correspondence between parties, Carnival's "crew injury report," photographic evidence, and Claimant's unsworn statement.</li></ul> |
| Apr. 4, 2017 | *Respondent's* Statement of Defense **(D.E. 22-8)** | <ul><li>Attaches reports from two defense experts, both of whom opine Claimant's condition is not attributable to the accident on Carnival's ship.<ul><li>Dr. Allen Singer (psychiatrist)</li><li>Dr. Jonathan Gottlieb (orthopedic surgeon)</li></ul></li><li>Carnival contests causation, arguing: "Claimant has presented no evidence that the claimed accident caused his condition(s)." (Statement of Defense at 8).</li><li>Carnival also argued, based on Dr. Gottlieb's report, that "Claimant is a habitual cigarette smoker and this habit is directly associated with chronic back pain and impairs healing capacity." (Statement of Defense at 10).</li><li>Carnival's supporting exhibits also included:<ul><li>Affidavit of Martha Zayas-Martinez, Carnival Senior Claims Representative, discussing Claimant's employment history.<ul><li>The affidavit gives testimony to contest the maintenance and cure claim and the amount of Claimant's economic damages.</li><li>Cites statistical data that the oldest persons employed by Carnival as a "bar waiter" (*i.e.*, Claimant's job) was 51 years old. (Aff. at ¶ 18).</li></ul></li><li>100 pages of medical records.</li><li>23 pages of correspondence between Carnival and Claimant and his counsel.</li><li>A 142-page published study discussing the connection between smoking and lower back pain.</li><li>A study discussing the criteria for diagnosing PTSD.</li></ul></li></ul> |

| Date | Filing or Event | Comments |
|---|---|---|
| Apr. 10, 2017 | Email from Arbitrator to Parties<br><br>(**D.E. 22-9**) | • Arbitrator wrote:<br>I have now received both Claimant and Respondent's written submissions.<br>Before I start reviewing, please let me know if Claimant intends to reply to Respondent's latest written submission…Respondent would also have the opportunity to reply.<br>Also, please note that ***I intend to rule based on written submissions and not through oral arbitration hearing***. That said, ***please let me know if the parties require otherwise***.<br>• Claimant's counsel responded that she would submit a reply and requested 30 days to do so. Claimant later received an extension and submitted the reply on July 26, 2017. |
| July 26, 2017 | Claimant's Reply to Statement of Defense<br><br>(**D.E. 22-10**) | • Responds to Statement of Defense and defense experts' opinions by attaching Claimant's own expert reports and medical records.<br>   o Dr. Jonathan Hyde (orthopedic surgeon);<br>   o Dr. Jorge Herrera (neuropsychologist and pain management doctor);<br>   o Paul Ramos (vocational specialist who opines on lost wages and cost of future medical care, based on physician reports and medical records) |
| Oct. 24, 2017 | ***Respondent's*** Motion to Strike Claimant's Expert Reports or Alternatively, to Compel Physical Examination of Claimant<br><br>(**D.E. 22-11**) | • Carnival moves to strike Claimant's reports submitted with the July 26, 2017 filing on ground that Claimant had added "completely new claims." (Mot. at 7).<br>• Argues "proper procedure" was for Claimant to "confer[] with Respondent's counsel regarding Claimant's additional claims and his plans to travel to Miami to undergo testing." (Mot. at 8).<br>• As further alternative relief, Carnival asks the Arbitrator to order Claimant to produce the June 2017 MRI films reviewed by Claimant's experts. (Mot. at 9). |

| Date | Filing or Event | Comments |
|---|---|---|
| Nov. 23, 2017 | Order on Respondent's Motion to Strike<br><br>(**D.E. 22-12**) | • Arbitrator compares the Revised Statement of Claim with Claimant's Reply and concludes "***Claimant does not add or change any claim***." (Order at 3).<br>   ○ "[T]he 3 expert reports provided by Claimant with his latest written submission ***have been provided in reply to Respondents' expert reports*** drafted by Messrs. Jon Gottlieb and Allen Singer, rather than in support of new/amended claims." (Order at 3).<br>   ○ "[T]he only 'addition' by Claimant is a financial assessment of his claims, which the arbitrator shall review in his absolute discretion." (Order at 3).<br>• Arbitrator declines to order Claimant to fly to Miami, at his own expense, for evaluation. After noting that Claimant "has put both his mental and physical health at issue from his Demand for Arbitration dated July 6th, 2016," he notes that Carnival never asked to examine him until its motion to strike: "Ordering, ***more than 15 months later***, such examination would delay again the final outcome of this arbitration, while the objective set forth by the NAM Rules is to provide a fair and expeditious resolution to all parties." (Order at 4).<br>• Nevertheless, the Arbitrator orders Claimant to produce June 2017 MRI films to Carnival and allows Carnival to submit ***rebuttal expert reports*** within 45 days. (Order at 4-5). |
| Feb. 6, 2018 | ***Respondent's*** First Sur-Reply [responds to Claimant's July 26, 2017 filing]<br><br>(**D.E. 22-13**) | • Carnival submits a brief and two rebuttal expert reports:<br>   ○ Dr. Gottlieb (orthopedic surgeon) opined the new MRI "revealed no interval changes when compared to the prior MRI." He disagreed that Claimant suffered a sacroiliac joint injury because, had it occurred on the ship, "the symptomatology would have been evident during the extensive evaluation and treatment period Mr. Jankula underwent for his other complaints." (Gottlieb Report at 1-2)<br>   ○ Dr. Singer (psychiatrist), opined Claimant "does not have PTSD, Traumatic Brain Injury or stress related dementia," and that he "does not appear to |

7

| Date | Filing or Event | Comments |
|---|---|---|
| | | suffer from a level of anxiety and depression." (Singer Report at 13). Instead, he opined that "the cognitive findings disclosed by Dr. Herrera's testing are what is commonly found in psychotic disorders" unrelated to a trauma of the sort alleged in this case. (Singer Report at 15). <br> ○ Dr. Daniel Marin (physiatrist and pain medicine specialist) responded to the report of Claimant's vocational specialist, Mr. Ramos. He did not respond to the amounts in Mr. Ramos's report, but instead stated "Mr. Jankula [should] be examined and evaluated by a qualified physician who is qualified to prepare a comprehensive Life Care Plan." (Marin Report at 10). <br> • In the cover email submitting this sur-reply, Carnival requested to depose Claimant, *for the first time in this arbitration – 19 months after it was commenced*. |
| Mar. 19, 2018 | Claimant's Reply to Respondent's Sur-Reply (**D.E. 22-14**) | • This responds to Carnival's submission of February 7. <br> • Brief (5-page) response to Carnival's submission. Claimant did not attach or reference any new expert materials. Instead, Claimant attacks defense experts' conclusions based on both sides' expert materials already on file. <br> • In her cover email submitting the pleading, Claimant's counsel urged the Arbitrator to deny Carnival's request for a deposition because "Respondent could have and should have requested his deposition in late 2016 or early 2017" and that "a deposition at this late date would create unfair delay and hardship on the Claimant." <br> • In her email, Claimant's counsel also "request[ed] the Tribunal proceed to make its decision for this arbitration." |
| Mar. 30, 2018 | Email from Arbitrator denying Carnival's request to depose Claimant, but | • Arbitrator wrote: <br> I agree with each party's point of view that arbitration proceedings shall, on one hand, be fast and efficient and, on the other hand, ensure to arrive at the proper result. |

| Date | Filing or Event | Comments |
|---|---|---|
| | allowing Carnival a *second sur-reply* (D.E. 22-15) | That being said, this arbitration has been requested ***more than 20 months ago*** and I do not consider it has been so far fast and expeditious. |
| | | Both parties had the opportunity to provide medical records and experts' reports as well as rebuttal reports on Claimant's condition. Experts have already exchanged their argument, which I shall review and consider. |
| | | I am not sure that Claimant's deposition would add anything decisive for the outcome of this arbitration, given the supporting evidence already submitted to my attention.… |
| | | For these reasons, I do not welcome Respondent's request for a deposition.… |
| | | Considering Claimant's latest submissions on March 19th, 2018, I let the opportunity to Respondent to reply, by April 30th 2018 at the latest. ***I will then rule [on] this matter and issue a final award as soon as possible.*** |
| Apr. 20, 2018 – April 23, 2018 | Email exchange between parties and Arbitrator re: Carnival's requested extension of time to file sur-reply and yet another rebuttal expert report (D.E. 22-16) | • On April 20, 2018, Carnival's counsel wrote: As the next submission is Carnival's *final sur-reply*, I seek to respond to only the new issues raised in the Claimant's most recent filing…Though I understand the Claimant's stated desire to conclude this arbitration as presently scheduled, I humbly request a brief extension of thirty days to file Carnival's *final sur-reply*. This extra time will sufficiently enable the voluminous prior responses to be digested, and for the *final sur-reply* to be narrowly tailored. |
| | | • On April 23, 2018, Carnival's counsel wrote again regarding the requested extension, adding "we are also waiting for an additional report from Dr. Gottlieb…that will be attached to Carnival's sur-reply." |
| | | • On April 23, 2018, the Arbitrator wrote: "I try to balance each of Claimant's and Respondent's interests in this arbitration before ruling but I consider that the 1-month extension you are seeking is too long." The Arbitrator gave Carnival a 7-day extension, through May 7, to file its second sur-reply. |

| Date | Filing or Event | Comments |
|---|---|---|
| May 7, 2018 | ***Respondent's*** Second Sur-Reply<br><br>(responds to Claimant's Mar. 19, 2017 filing)<br><br>**(D.E. 22-17)** | • Carnival submits yet another rebuttal expert report, this one from its expert orthopedic surgeon, Dr. Gottlieb.<br>• Relying on Dr. Gottlieb's report, Carnival argues that the testing performed by Claimant's expert, Dr. Hyde, was inadequate to diagnose sacroiliac joint dysfunction because "Dr. Hyde did not perform the diagnostic testing required to diagnose Claimant with sacroiliac joint dysfunction, let alone attribute that diagnosis to a specific triggering event." (Brief at 3).<br>• Carnival also argues "Claimant may have mental health concerns, but any such mental illness predates the alleged incident and is not attributable to Respondent." (Brief at 4). |
| Sept. 5, 2018 | Final Award<br><br>**(D.E. 1-2)** | • Arbitrator concludes that Claimant proved his claims for a "tort action subject to Panamanian law" (*i.e.*, negligence) (D.E. 1-2, at 7-15), and a "Panamanian labor action," (*id.* at 15-17).<br>• Arbitrator discussed expert reports from both sides in evaluating causation (D.E. 1-2, at 9-10), then concluded that "Claimant fell backwards while trying to get into his assigned bed due to a broken handrail, and that such fall injured his back and is at the origin of Claimant's complaints." (*id.* at 10).<br>• Damages<br>   o <u>Past and future lost earnings</u>: Claimant sought lost earnings through age 67, but the Arbitrator awarded only through age 51, resulting in a diminution of more than $442,000. (*id.* at 11-12).<br>   o <u>Past and future medical expenses</u>: Claimant sought $859,473.11, but the Arbitrator awarded only $500,000. (*Id.* at 13-14).<br>   o <u>"Moral damages"</u>: This encompassed his emotional/mental injury and pain and suffering. Claimant sought $2.4 million, but the Arbitrator awarded only $300,000. (*Id.* at 14-15).<br>      ▪ Basis for emotional damages was "respondent may not have fully complied with its obligations" to maintenance and cure and "such circumstances have been a further |

| Date | Filing or Event | Comments |
|---|---|---|
| | | <ul><li>source of concern and stress for Claimant." (*Id.* at 15).</li><li>Also, "[b]oth parties' experts opine that Claimant's psychological state is likely related to pain." (*Id.* at 15).</li><li>"However, the Tribunal considers that Claimant does not meet the criteria for PTSD." (*Id.* at 15).</li><li>There is no mention of any "traumatic brain injury" or "neuropsychological injury" as a basis for the award for moral damages. (*Id.* at 14-15).</li></ul><ul><li>Maintenance and Cure: The arbitrator found that Carnival had violated its duty to provide maintenance and cure, and awarded $11,600. However, he deducted this amount from the economic damages award to prevent double recovery. (*Id.* at 16).</li><li>Disability Benefits: The Arbitrator awarded $43,500 based on a Panamanian statutory compensation table, but deducted this amount from the economic damages award to prevent double recovery. (*Id.* at 17).</li></ul><ul><li>Final award was $1,357,831.40 (*id.* at 18), while Claimant had sought more than $3.7 million.</li></ul> |
| Oct. 24, 2018 | Post-Award Order Denying Carnival's Motion to Vacate Final Award<br><br>**(D.E. 1-3)** | <ul><li>The Arbitrator issued an 11-page order rejecting, point-by-point, precisely the same arguments that Carnival now makes to this Court. (D.E. 1-3 at 1-11).</li><li>After addressing each point individually, the Arbitrator wrote: "Contrary to its assertions, ***Respondent had the opportunity to defend itself through a fair trial, and to submit arguments and supporting evidence which have been considered and followed by this Tribunal***." (*Id.* at 9).</li><li>The Arbitrator noted that he made several significant rulings in Carnival's favor, including:<ul><li>Ordering Claimant to produce the June 2017 MRI films and giving Carnival 90 days of extensions to submit rebuttal expert reports. (*Id.* at 10).</li></ul></li></ul> |

| Date | Filing or Event | Comments |
|---|---|---|
| | | <ul><li>○ "[C]onsidered evidence submitted, in particular, by Mr. Singer [Carnival's psychiatrist], and ruled that Claimant did not meet the PTSD criteria." (*Id.*).</li><li>○ "Considered other evidence and rebuttal expert reports provided by Respondent, when assessing Claimant's prejudice [damages]." (*Id.*).</li><li>• The Arbitrator addressed Carnival's argument that he had purportedly relied on Claimant's unsworn statement attached to the Revised Statement of Claim. He stated "***this Tribunal did not consider this statement when drafting its final award***, especially because it was not in line with the Rules' requirements, and made no reference to it in its final award." (*Id.*).</li></ul> |

**B. The R&R correctly found the Arbitrator's rulings concerning Plaintiff's reply and Carnival's requests for a medical examination and deposition are not grounds for vacatur**

Carnival's arguments for vacatur based on the Arbitrator's procedural rulings reflect a grave misunderstanding of the nature of arbitration and a District Court's narrow review of an arbitrator's procedural rulings. Simply put, this was arbitration, not federal litigation. As the R&R succinctly noted, "parties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena." (D.E. 35 at 6 (citing *Dean v. Sullivan*, 118 F.3d 1170, 1173 (7th Cir. 1997)). *See also id.* ("Arbitration proceedings are not constrained by formal rules of procedure or evidence.") (quoting *Hoteles Condado Beach v. Union DeTronquistas*, 763 F.2d 34, 38 (1st Cir. 1985)). These well-settled rules are critical to this Court's review of the R&R.

Accordingly, Carnival's arguments based on the U.S. federal litigation principle that "a reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court" (D.E. 40 at 18) is entirely off-point. The Arbitrator was not required to apply U.S. litigation

rules; instead, as the R&R noted, he was only required to provide a "fundamentally fair" proceeding that comports with due process. (D.E. 35 at 5). The R&R correctly found that the Arbitrator's decision to permit Plaintiff to file a reply met that standard.

First, the R&R expressly agreed with the Arbitrator's finding that the reply "did not add or alter any claim and, as a result, the arbitrator's decision to permit the reply ***did not violate a rule of procedure***." (D.E. 35, at 10). Carnival has failed to show any error with this finding, which is amply supported by case law holding that arbitrators enjoy particularly broad discretion when interpreting an arbitral body's own procedural rules. *See, e.g.*, *Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 921 F.3d 1291, 1304 (11th Cir. 2019) ("*INPROTSA*") ("But the tribunal, 'comparatively more expert about the meaning of its own rule, is comparatively better able to interpret and apply it.'") (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)); *Hoteles Condado Beach*, 763 F.2d at 38 ("An arbitrator enjoys wide latitude in conducting an arbitration hearing.").

Second, even assuming that allowing Plaintiff to file a reply was improper, the R&R found that vacatur was not warranted because the ruling did not "disregard the minimal requirements of fairness, by depriving [Carnival] of the meaningful opportunity to be heard." (D.E. 35, at 10). This latter ground (*i.e.*, the lack of substantial prejudice) was based on the fact that the Arbitrator had "required Plaintiff to disclose additional medical information after his reply and permitted Defendant to file two sur-replies with additional medical expert evidence based upon that information." (D.E. 35 at 10).

Carnival's argument concerning the Arbitrator's decision declining to allow a medical examination is equally without merit. Carnival argues that the "report and recommendation accepted Plaintiff's incorrect argument that Carnival had already 'examined' Plaintiff because its

maintenance and cure duty required it to pay for Claimant's medical treatment." (D.E. 40, at 13). To be clear, the R&R did *not* make a finding that Carnival had already examined Plaintiff based on medical treatment after he left the service of the ship.[2] Instead, it found:

> The Arbitrator based his decision to deny Defendant's request [for a medical examination] on Rule 1 of the rules of arbitration, which reads: "These rules are designed to secure the most expeditious, private and inexpensive resolution and determination of every case, [whether] in law or equity." DE 14-1 at 2. The arbitrator therefore weighed one rule, the rule requiring a rapid and inexpensive determination, with another rule, the right to medically examine a Plaintiff, and did so in the context of the case.

(D.E. 35 at 10). Thus, the R&R concluded that the Arbitrator properly exercised his discretion in applying the NAM Rules (*i.e.*, weighing one rule against another) and, therefore, "the arbitrator did not violate a rule or procedure of arbitration by denying Defendant's request for a medical evaluation." (D.E. 35 at 11).

However, even if the Arbitrator had violated a procedural rule by declining to allow Carnival to conduct a medical examination, Carnival cannot overcome the R&R's alternative finding that any such violation "did not cause Defendant substantial prejudice, given the additional discovery and sur-replies that the arbitrator permitted Defendant." (D.E. 35 at 12). As the above timeline illustrates, the record amply supports that finding. Thus, the Arbitrator's ruling denying Carnival's belated request to conduct a medical examination of Plaintiff (requested *15 months* after the arbitration was commenced) is not grounds for vacating the Award.

---

[2] The R&R simply noted that Carnival had medically examined Plaintiff after his injury, including by Carnival's own "medical staff *onboard Defendant's ship* and specialists on the island of St. Thomas, *while Plaintiff was still a crew member and complaining of his injuries*." (D.E. 35 at 11). Carnival's argument in the Objection is based on a footnote in the R&R, addressing subsequent medical treatment in Europe, where the Magistrate observed that "[a]rguably Defendant also effectively examined Plaintiff through an unspecified number of doctors in Europe while Defendant was still paying plaintiff for his maintenance and cure." (*Id.* at 11 n.7). That was plainly not the basis for the R&R's finding on the medical examination issue, though.

As for the Arbitrator's refusal to allow Carnival's belated request to depose Plaintiff — a request that Carnival did not make until **19 months** into the proceedings — Carnival argues that "Carnival was likewise entitled to take Plaintiff's deposition." (D.E. 40 at 15). Carnival's argument on this point is that the Arbitrator misapplied the NAM Rules when he gave priority to NAM Rule 1, which requires the "most expeditious, private and inexpensive resolution and determination," over NAM Rule 16, which allows parties to conduct medical examinations. (*See* D.E. 40 at 15 (arguing that NAM Rule 1 "does not mean that all the other rules and procedural safeguards go out the window for the sake of speed")).

As the R&R makes clear, however, the Arbitrator did not disregard all procedural rules, but instead exercised his considerable discretion by evaluating Carnival's belated request for a deposition with the need for advancing the case expeditiously. The R&R noted that the Arbitrator took into account Carnival's 19-month delay in seeking the deposition, plus the "large amount of medical and expert evidence that both parties had assembled" already, and "concluded that the Plaintiff's testimony would not add anything to the arbitrator's final decision." (D.E. 35 at 11). This is precisely the sort of procedural ruling to which U.S. courts afford foreign arbitrators a particularly broad degree of discretion. *INPROTSA*, 921 F.3d at 1304. *See also Hoteles Condado Beach*, 763 F.2d at 39 (noting an arbitrator is not "bound to hear all of the evidence tendered by the parties," but instead, "must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments").

Moreover, as with the Arbitrator's decision concerning a reply and medical examination, the R&R correctly noted that any potential procedural error in refusing to allow Carnival to take Plaintiff's deposition did not create "substantial prejudice" to warrant vacating the award. As the Magistrate wrote: "And even if the arbitrator did err, this did not cause Defendant substantial

prejudice, given the additional discovery and sur-replies that the arbitrator permitted Defendant." (D.E. 35 at 12). Again, the above timeline and exhibits referenced therein confirm that the record fully supports that finding.

Finally, Plaintiff addresses Carnival's argument concerning *Compagnie des Bauxites de Guinee v. Hammermills, Inc.*, 1992 WL 122712 (D.D.C. May 29, 1992). Carnival asserts that Plaintiff and the R&R "principally contended this case is like [*Hammermills*]," and then proceeds to discuss the facts of that case. (D.E. 40 at 18). This is a strawman argument, for neither Plaintiff nor the R&R ever contended that this case "is like *Hammermills*." Instead, the R&R simply cited *Hammermills* for the proposition that an arbitrator's procedural error will not warrant vacatur unless the error "worked substantial prejudice to the complaining party." (D.E. 35 at 7) (quoting *Hammermills*, 1992 WL 122712, at *5). And, as the R&R recognized, both Plaintiff and Carnival cited to *Hammermills* for this "substantial prejudice" standard in their briefing. (*See* D.E. 14, at 10 (Carnival's Cross-Petition); D.E. 22, at 16 (Plaintiff's Opp. to Cross-Petition)).

### C. The R&R correctly found the Arbitrator's decision to rule without an in-person hearing is not grounds for vacatur

Carnival's objection concerning the in-person hearing issue misses the mark completely. To recap, Carnival argued that "because the arbitrator ruled without holding a hearing and because Defendant never consented to this in writing, Defendant was denied due process and the arbitration proceeding was fundamentally unfair." (D.E. 35 at 13). The R&R rejected that argument, not because the Magistrate made a finding that Carnival had consented to the Arbitrator deciding the case without a hearing, but because the Magistrate concluded that the proceedings were not "fundamentally unfair." Specifically, the R&R found:

> The arbitrator's final award demonstrates the reasonable measures the arbitrator took to avoid prejudice to Defendant. The arbitrator explained that he had erred on the side of allowing Defendant extra

16

> due process—he permitted two rounds of sur-replies and a substantial amount of rebuttal expert testimony from Defendant…
>
> This record simply does not support that Defendant was denied the opportunity to be heard, or that the arbitrator ruled on an inadequate record. The evidence in this case, on both sides, was substantial. The arbitrator's decision was thoroughly reasoned. He ruled in Defendant's favor in many respects. Defendant was permitted many opportunities—which it took—to have its defenses fully heard and considered by the arbitrator.

(D.E. 35 at 14-15) (internal record citations omitted).

Carnival's only argument addressing the in-person hearing issue, however, wrongly presumes that (*i*) the Magistrate made a finding that Carnival had consented to the Arbitrator issuing a decision without a hearing, and (*ii*) that the R&R is based on such a finding. (*See* D.E. 40 at 16 ("The report and recommendation improperly put the onus on Carnival to strenuously object to a lack of in-person hearing…Parties typically do not waive contractual rights through acquiescence.")). Carnival then devotes a full page to discussing inapposite cases concerning whether a waiver must be express or implied. (D.E. 40 at 16-17). But the R&R never made a finding that Carnival had consented. To the contrary, the R&R expressly found "it does appear that Defendant never formally consented to the arbitrator ruling on the papers alone and, as a result, Defendant's position that the arbitrator committed a procedural error is not without merit." (D.E. 35, at 13). Accordingly, Carnival's objection on this issue fails because it attacks a finding that the Magistrate did not make and, therefore, was not the basis for the R&R.

Although consent was plainly not a basis for the R&R, Plaintiff notes that the record does support a finding that Carnival consented to the Arbitrator issuing a decision without an in-person hearing. As the R&R pointed out, the Arbitrator advised the parties, in writing, **on three separate occasions**, that he intended to rule on the papers, without a hearing. (D.E. 35, at 13-14). In one of those communications, the Arbitrator "expressly invited the parties to inform him if they desired

17

otherwise" — *i.e.*, if either party demanded an in-person hearing — and, in response to that invitation, "Defendant was silent." (D.E. 35, at 13-14). Based on these facts, the Magistrate observed, without making a finding, that "*[a]rguably*, Defendant consented in writing." (D.E. 35 at 14 n.9). Carnival cannot be heard to complain to this Court (especially under the highly deferential standard for reviewing a foreign arbitral award) that the lack of an in-person hearing was so prejudicial as to amount to a denial of due process when Carnival was repeatedly advised that no hearing would be held, but never objected.

Finally, while the R&R observed, without elaboration, that the Arbitrator "ruled in Defendant's favor in many respects," Plaintiff highlights some of those rulings below, as they are further evidence that the Arbitrator carefully considered (and accepted) many of Carnival's arguments and evidence. Those rulings include:

- In a preliminary order, the Arbitrator ruled in Carnival's favor on: (1) validity of the Seafarer Agreement; (2) applicability of Panamanian law; and (3) enforceability of the forum selection clause specifying Monaco as the place of the arbitration. (D.E. 22-6 at 19).
- The Arbitrator agreed with Carnival's expert psychiatrist, Dr. Singer, finding that Plaintiff did not suffer PTSD, and also declined to award any damages for traumatic brain injury or neuropsychological injury. (D.E. 1-2, at 14-15).
- The Arbitrator accepted the opinion of Carnival's damages expert, Dr. Marin, and substantially reduced Plaintiff's economic damages award. (D.E. 1-2, at 13-14).
- The Arbitrator awarded future lost wages only through age 51 (as opposed to age 67, as Plaintiff had requested) based on an affidavit submitted by Carnival, resulting in a diminution of more than $442,000. (D.E. 1-2, at 12).
- The Arbitrator awarded Plaintiff $300,000 in "moral damages" for past and future pain and suffering, a fraction of the $2.4 million Plaintiff had requested. (D.E. 1-2 at 14-15; D.E. 22-10, at 16).
- The Arbitrator awarded Plaintiff total damages of approximately $1.35 million, which is slightly more than 36% of the $3.7 million Plaintiff had requested. (D.E. 1-2 at 18; D.E. 22-10, at 16).

The Arbitrator did not, as Carnival argues, "accept[] his [Plaintiff's] statement and the opinions of his paid medical experts without question" (D.E. 40 at 3), take "Plaintiff's unsworn

18

and unchallenged version of events as true" (*id.* at 8), or "prejudge[] the case materially and unfairly," (*id.* at 14).

## CONCLUSION

For the reasons stated above and in Plaintiff's Response to Carnival's Petition to Vacate (D.E. 22), Plaintiff respectfully requests that this Court overrule Carnival's Objection (D.E. 40), adopt in full the Magistrate's Report and Recommendation (D.E. 35), and enter final judgment confirming the Final Award.

          Respectfully submitted by:

          MEISTER LAW, LLC.
          tonyajmeister@aol.com
          maria@meisterlawfirm.com
          Courthouse Tower, Suite 750
          44 West Flagler Street
          Miami. Florida 33130
          Telephone: (305) 590-5570
          Facsimile: (305) 675-3787
              -and-
          RUSSO APPELLATE FIRM, P.A.
          e-service@russoappeals.com
          7300 North Kendall Drive, Suite 600
          Miami, Florida  33156
          Telephone: (305) 666-4660
          Facsimile: (305) 666-4470

          Counsel for Plaintiff


          By:  /s/  Paulo R. Lima
                PAULO R. LIMA
                Florida Bar No. 0064364
                prl@russoappeals.com
                ELIZABETH K. RUSSO
                Florida Bar No. 260657
                ekr@russoappeals.com

CASE NO.: 18-cv-24670-UU

## CERTIFICATE OF SERVICE

I hereby certify that, on this 20th day of August, 2019, I have filed a copy of the foregoing with the CM/ECF System, which will cause a copy to be served on Defendant's counsel of record listed below.

/s/ Paulo R. Lima

Cameron W. Eubanks
ceubanks@maselaw.com
Curtis J. Mase
cmase@maselaw.com
MASE MEBANE & BRIGGS, P.A.
2601 S. Bayshore Drive, Suite 800
Miami, Florida 33133
Tel: (305) 377-3770
Fax: (305) 377-0080

*Counsel for Defendant*